No. 99-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 200

295 Mont. 430

984 P.2d 739

ANNABELLE BEDREJO, individually and as Personal Representative for the

Estate of Estrella Yoro, and as Mother and Guardian of CHELSEA BEDREJO;

MARY SOL CHAN, individually and as Personal Representative for the Estate

of Kirk Chan and as Mother and Guardian of JAREN CHAN and JASMINE

CHAN; JODI LEEANN BURTON, as Mother and Guardian of KATELYN

BURTON; SANTIAGO ARMAMENTO, individually and as Personal

Representative of the Estate of Mila Armamento; CELERIN P. ARMAMENTO;

CATHERINE P. ARMAMENTO; SANTIAGO ARMAMENTO, III;

ANTONINA GASTON; ANDREW CATAHAN;GLORIA PRADO;

RICARDO BEDREJO and ANTHONY YORO,

Plaintiffs and Appellants,

v.

TRIPLE E CANADA, LTD., a/k/a LOAD KINGINDUSTRIES and

the ESTATE OF MARBEL YORO,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Beaverhead County,

Honorable Robert J. Boyd, Judge Presiding.

COUNSEL OF RECORD:

For Appellants:

Frank C. Richter, Richter, Torkelson, Hanson & Tucker, Billings, Montana

James R. Halverson and Brandeis G. Boyar, Herndon, Sweeney & Halverson,

Billings, Montana

For Respondents:

Marshall Mickelson, Corrette, Pohlman & Kebe, Butte, Montana

Steven J. Lehman and Steven R. Milch, Crowley, Haughey, Hanson, Toole

and Dietrich, Billings, Montana

_____

Submitted on Briefs: July 29, 1999

Decided: August 30, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

1. ¶The plaintiffs appeal from the decision of the Fifth Judicial District Court, Beaverhead County, dismissing their complaint against defendant Triple E Canada, LTD., on grounds that the court did not have personal jurisdiction over Triple E. We affirm.

2. ¶The issue is whether the court erred in dismissing the complaint against Triple E for lack of personal jurisdiction.

3. ¶On July 22, 1995, a 1990 Regency motor home manufactured by Triple E swerved off Interstate Highway 15 south of Dillon, Montana. The motor home went over an embankment, rolled over onto its top, and broke apart. The chassis came to rest upside down on the motor home body, crushing its occupants. Four occupants, including the driver, Marbel Yoro, were killed; two others were injured. Relatives of the victims traveling behind the motor home in a van witnessed the wreck.

4. ¶ The victims and their surviving relatives, all citizens of the Philippines or Canada, brought this suit against Marbel Yoro and Triple E, a Canadian corporation authorized to do business in Manitoba, Canada. Triple E entered a limited special

appearance to move to dismiss the action against it for lack of personal jurisdiction. After discovery and briefing, the District Court granted Triple E's motion. That decision has been certified as final pursuant to Rule 54(b), M.R.Civ.P.

## Discussion

1. ¶Did the court err in dismissing the complaint against Triple E for lack of personal jurisdiction?

2. ¶Rule 4(B), M.R.Civ.P., describes the persons who are subject to the jurisdiction of Montana state courts. Plaintiffs argue that the District Court's jurisdiction is justified under principles of both general jurisdiction and long arm jurisdiction.

3. ¶Any person "found within the state of Montana" is subject to the general jurisdiction of the courts of this state. Rule 4B(1), M.R.Civ.P. To be "found within" a state, the defendant's activities in that state must be substantial, systematic, and continuous. *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

4. ¶The plaintiffs list as evidence that Triple E is "found within" Montana the following factors: Triple E advertises in nationally circulated magazines which are distributed in Montana; Triple E runs an interactive web site on the Internet's World Wide Web which is available to Montana web users; Triple E has a network of dealerships, none of which are in Montana, but some of which provide sales coverage for at least three Montanans who have purchased Triple E vehicles; and Triple E provided an "Adventure Club" for its members, through which it planned trips throughout Canada and the United States, some of which, the plaintiffs allege, would necessitate travel through Montana. The plaintiffs assert that these activities demonstrate Triple E's continuous, substantial, and systematic presence in Montana. Alternatively, the plaintiffs allege that the existence of Triple E's web site alone is enough to justify the Montana court's jurisdiction.

5. ¶This Court has never been faced with the issue of whether maintaining an Internet web site may be considered an act by which a person purposefully avails himself of the privilege of conducting business in Montana. The plaintiffs cite *Inset Systems, Inc. v. Instruction Set, Inc.* (D. Conn. 1996), 937 F.Supp. 161; *Maritz, Inc. v. Cybergold, Inc.* (E.D. Mo. 1996), 947 F.Supp. 1328; and *Heroes, Inc. v. Heroes Foundation* (D. D.C. 1996), 958 F.Supp. 1, as examples of cases in which the defendants' business via Internet web pages was considered justification for determinations that the state court had jurisdiction over the defendants.

6. ¶The three cases cited by the plaintiffs are distinguishable from the present case in

that the subject matter of those lawsuits either involved communication through the Internet or trademark infringement claims directly connected with the Internet activity of the defendant.

In contrast, the tortious event which is the subject of this action is the sale of an allegedly defective motor home, which sale did not occur in Montana. Plaintiffs have established no connection between Triple E's Internet web site and the events upon which this case is based.

1. ¶Triple E is not registered with the Montana Secretary of State to conduct business in Montana. It does not have an office, warehouse, or any other facilities in Montana. It does not have a telephone listing in Montana. Triple E does not have any employees in Montana. It does not have any distributors or dealers located in Montana to sell motor homes, and the plaintiffs presented no evidence that the Triple E motor home which wrecked was purchased in Montana. Triple E does not own any real estate in Montana, nor does it do direct advertising in Montana with any Montana media.

2. ¶The above-listed facts are significant in determining whether general jurisdiction exists and indicate that it does not. *See, e.g., Bi-Lo Foods, Inc. v. Alpine Bank, Clifton*, 1998 MT 40, ¶ 19, 287 Mont. 367, ¶ 19, 955 P.2d 154, ¶ 19; *Simmons Oil Corp. v. Holly Corp.* (1990), 244 Mont. 75, 796 P.2d 189. Triple E's advertising in national magazines, its Internet web site, its Adventure Club, and its out-of-state dealerships which have served at least three Montanans do not establish a substantial, systematic, and continuous presence in Montana. We hold that Triple E was not "found within" Montana so as to subject it to the general jurisdiction of Montana courts.

3. ¶ Plaintiffs next argue that the exercise of Montana's long arm jurisdiction is justified under the following statutory provision:

In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:

. . .

(b) the commission of any act which results in accrual within this state of a tort action[.]

Rule 4(B)(1), M.R.Civ.P. Plaintiffs contend that the tort action accrued in this case when the motor home wrecked south of Dillon and that the District Court thus had personal jurisdiction over Triple E for purposes of this lawsuit.

1. ¶If the Rule 4(B)(1) requirements for long arm jurisdiction are met, a court must also determine whether exercising jurisdiction over the defendant would be commensurate with the defendant's due process rights. *Simmons v. State* (1983), 206 Mont. 264, 272-73, 670 P.2d 1372, 1376-77. The exercise of jurisdiction comports with a defendant's right of due process only if the following three elements are present:

1. The nonresident defendant must have done some act or consummated some transaction with the forum or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking its laws.

2. The claim must be one which arises out of or results from the defendant's forum-related activities.

3. The exercise of jurisdiction must be reasonable.

*Simmons, 206 Mont. at 276, 670 P.2d at 1378.*

1. ¶Plaintiffs' argument that Triple E purposefully availed itself of the privilege of conducting activities in Montana is based upon the same acts cited under their argument that Triple E was subject to the general jurisdiction of Montana courts. Again, the plaintiffs make no direct allegation that their claims arose out of or resulted from Triple E's "forum-related activities" of having an Internet web site, Adventure Club, or network of dealerships. Nothing was presented to connect the victims or the driver of the motor home with any of these "contacts" between Montana and Triple E.
2. ¶The plaintiffs' reliance on Triple E's advertisements in nationally circulated

magazines to establish that Triple E is subject to Montana's long arm jurisdiction is misplaced. As a threshold matter, the plaintiffs have not established that the national magazines in which Triple E advertises are available in Montana. Moreover, the law is clear that the "mere placement of advertisements in nationally distributed papers or journals does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser." *Federated Rural Elec. Ins. v. Kootenai Elec. Co-op* (10th Cir. 1994), 17 F.3rd 1302, 1305.

3. ¶We have stated, relative to long arm jurisdiction, that "[i]nterstate communication is an almost inevitable accompaniment to doing business in the modern world, and cannot by itself be considered a 'contact' for justifying the exercise of personal jurisdiction." *Simmons,* 206 Mont. at 280, 670 P.2d at 1380. This statement is applicable to Triple E's advertising in nationally distributed magazines as well as to its maintenance of an Internet web site.

4. ¶Triple E cites several cases in which the defendants' Internet web sites have been rejected as bases for long arm jurisdiction. In *Bensusan Restaurant Corp. v. King* (S. D. N.Y. 1996), 937 F.Supp. 295, *aff'd* 126 F.3d 25 (2nd Cir. 1997), the court concluded that the defendant, the operator of a Missouri nightclub, could not be haled into court in New York on grounds that he had created a web site accessible in New York:

King has done nothing to purposefully avail himself of the benefits of New York. King, like numerous others, simply created a Web site and permitted anyone who could find it to access it. Creating a site, like placing a product into the stream of commerce, may be felt nationwide--or even worldwide--but, without more, it is not an act purposefully directed toward the forum state. . . . There are no allegations that King actively sought to encourage New Yorkers to access his site, or that he conducted any business--let alone a continuous and systematic part of its [sic] business--in New York. There is in fact no suggestion that King has any presence of any kind in New York other than the Web site that can be accessed worldwide.

*Bensusan Restaurant, 937 F.Supp. at 301.*

1. ¶ Triple E further quotes *Millennium Enterprises, Inc. v. Millennium Music LP* (D. Or. 1999), 33 F.Supp.2d 907, 922-23:

The existence of a Web site, whether passive or interactive, does not rise to the requisite level of conduct. Publishing a Web site requires no "deliberate" action within the forum state. Furthermore, a Web site is not automatically projected to a user's computer without invitation as are advertisements in a newspaper or on the television and radio. Rather, the user must take affirmative action to access either a passive or interactive Web site. The user must turn on a computer, access the Internet and the Web, and browse the Web for a particular site. Thus, . . . information published on Web sites is not thrust upon users indiscriminately.

. . .

. . . Web sites are accessible day and night to all who possess the necessary technological know-how and equipment. Thus, if an interactive Web site can constitute "purposeful availment" of a forum simply by being continuously accessible to residents of that forum, surely that contact can be considered "continuous and systematic" for purposes of general jurisdiction. Taking this reasoning to its logical conclusion, a plaintiff could sue a foreign defendant in any forum and claim jurisdiction based on the defendant's interactive Web site, even if the cause of action is unrelated to the Web site. Such results hardly conform with notions of "fair play and substantial justice." *International Shoe*, 326 U.S. at 320, 66 S.Ct. 154. The grasp of personal jurisdiction was never intended to reach so far and so wide.

In *Millennium*, the court examined whether having varying levels of interactivity of web sites constitutes "deliberate action" within the forum state. The *Millennium* court stated

[u]ntil transactions with Oregon residents are consummated through defendants' Web site, defendants cannot reasonably anticipate that they will be brought before this court, simply because they advertise their products through a global medium which provides the capability of engaging in commercial transactions.

*Millennium*, 33 F.Supp.2d at 923.

1. ¶*Bensusan* and *Millennium* are persuasive as to the present case. In that regard,

although Triple E's web site is available for viewing in Montana, there was no evidence of any transactions with Montana residents through that web site.

2. ¶We conclude that the plaintiffs have not established that Triple E purposefully availed itself of the privilege of conducting business in Montana, nor did the plaintiffs' claims arise out of or result from Triple E's alleged activities in Montana. We agree with the District Court that any "entry" by Triple E into Montana amounted to only "an insignificant trickle" in the stream of commerce, and we hold that the exercise of jurisdiction over Triple E would not be reasonable. We affirm the decision of the District Court that it lacked jurisdiction over Triple E for purposes of this lawsuit.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER